

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
   **JUDGE**

# LETTER OPINION

December 15, 2006

Shavar D. Jeffries
Seton Hall Law School
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102
*Attorney for Plaintiff*s

Colette R. Buchanan
Office of the US Attorney
970 Broad Street
Room 700
Newark, NJ 07102
*Attorney for Federal Defendant*s

Robert M. Purcell, Jr.
State of New Jersey
Division of Law
25 Market Street
P.O. Box 106
Trenton, NJ 08625
*Attorney for State Defendant*s

> Re:   HUD Tenants Coalition, et al. v. U.S. Dept. of Housing and Urban Devel. et al.
>        Civil Action No. 05-3283 (WJM)

Dear Counsel:

     This matter comes before the Court on Defendants U.S. Department of Housing and Urban Development and Alphonso Jackson's (the "Federal Defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (2), (5) and (6).  Also before the Court is Defendants Marge Della Vecchia and Anthony Cupano's (the "State Defendants") 12(b)(1) and (6) motion to dismiss.  For the reasons outlined below, these motions will both be **GRANTED** and the Complaint **DISMISSED**.

**I.      Background**

This case is essentially a dispute over the form of rent increases in a New Jersey subsidized housing project. Plaintiffs are an organization that includes residents at Zion Towers Apartments in Newark ("Zion") and Zion tenant Samuel Rivers. Plaintiffs are suing both Federal and State Defendants for raising rents without adhering to proper procedure.

Plaintiffs filed the Complaint on June 29, 2005 (First Amended, October 14, 2005) alleging that Defendants, variously, violated the Administrative Procedure Act ("APA"), the National Housing Act ("NHA"), the Due Process Clause and New Jersey housing regulations. The Complaint seeks unspecified damages, a declaratory judgment that Defendants have violated their rights, permanent injunctions resetting rents to prior levels, and that Defendants promulgate a rule or implement a policy defining the minimum obligations of the "narrative statement" and "energy conservation plan" ("ECP") filings required in submissions for certain rent-increases.

Zion is a part of the Section 236 NHA Housing Program which provides subsidies to encourage private organizations, or "sponsors," like Zion, to develop and maintain affordable housing for low-income tenants by subsidizing housing project mortgages. Zion was initially financed by HMFA, and HUD pays interest-reduction subsidies to HMFA under the 236 program. When Zion wants to raise rents, it must first submit an application to HMFA which then reviews the application and makes a recommendation to HUD; HUD makes the final approval as to any rent-increase.

In order to raise rents to certain levels, Zion must adhere to specific procedures outlined by both HMFA and HUD. Rent increases are submitted by Zion to HMFA which can either deny or recommend approval of the application. If HMFA recommends approval, then the application goes to HUD for final approval. 24 C.F.R. § 245.330. However, at least 30 days prior to submitting a rent-increase application to HMFA, Zion must first provide reasonable and adequate notice to its tenants, in a specified format, of the proposed increase. 24 C.F.R. 245.310. This notice informs tenants where they may inspect the documents Zion intends to submit in support of the rent-increase application and also provides tenants with a 30-day opportunity to make any comments on the proposed increase. Among the documents Zion must provide in support of each rent-increase are "[a] narrative statement of the reasons for the requested increase in maximum permissible rents," and "[a] status report on the project's implementation of its current Energy Conservation Plan." 24 C.F.R. 245.315(a). The contents of neither the narrative statement nor the energy conservation plan are further defined in the relevant statutes.

At contention in this suit are a series of proposed rent-increases at Zion Towers between 1999 - 2004 summarized as follows:

> *March 31, 1999*: Zion requested a 2% rent increase. The narrative statement said "Administrative Expenses, Maintenance and Repairs, Water, Real Estate Taxes, Insurance and Electricity." The ECP status report stated that Zion was "continuing to purchase natural gas from a third-part buyer and continuing to use cogeneration to offset the use of natural resources." Rivers wrote to HMFA complaining that the narrative statement was insufficient and that Zion Towers lacked corporate status necessary to apply for the increase. HMFA wrote

back to Rivers on June 9, 1999 that the narrative statement was sufficient and that Zion's corporate status was not relevant.  On June 14, 1999, HMFA forwarded the packet to HUD recommending approval.  **HUD approved the 2% increase.**

*April 30, 2001*:  Zion requested a 4% rent increase.  The narrative statement said "Increased Utility Costs, Generate Funds to pay down additional debt of project (i.e. DeWilde Pool Mortgage), and Inflationary Increases in Administration, Salaries, Insurance, and Maintenance Expenses."  The ECP status report was identical to March 1999.  Rivers wrote to HMFA commenting that the narrative statement and ECP were inadequate.  Zion then revised the rent increase application and slightly revised the narrative statement.  Rivers wrote two more letters complaining to HMFA that the statements were inadequate for him to intelligently comment and adding that the application also lacked a Zion Board resolution authorizing the increase.  HMFA responded to the letters on October 1, 2001 that the narrative statement and ECP were sufficient and forwarded the application to HUD recommending approval.  **HUD approved the 4% increase.**

*March 31, 2002*:  Zion requested a 3% rent increase.  The narrative statement said only "Insurance."  The ECP status report was unchanged from before.  Rivers wrote to HMFA that the application should be rejected because of inadequate narrative statement and ECP.  HMFA responded to Rivers that it accepted the narrative statement and ECP as sufficient and had forwarded the application to HUD recommending approval.  **HUD *denied* the increase in September 2002.**

*March 31, 2003*:  Zion requested an 11% rent increase.  The narrative statement said "Inflationary Increase to Salary Expenses, Maintenance & Repair Expenses, Maintenance Contracts Expenses and Insurance Premiums."  The ECP status report said Zion was "continuing to purchase natural gas from a third-party buyer, continuing to use cogeneration to offset the use of natural resources, and it qualified for the Lighting Rewards Program to reduce Kilowatt-hour demand."  Rivers again wrote to challenge these as inadequate, and HMFA forwarded the application to HUD recommending approval.  **HUD approved an 8% rent increase.**

*March 31, 2004*:  Zion requested a 4.5% rent increase.  The narrative statement said "Inflationary Increased to Salary Expenses, Maintenance & Repair Expenses, Maintenance Contracts Expenses and Real Estate Insurance."  The ECP status report said Zion was "continuing to purchase natural gas from a third-party buyer, continuing to use cogeneration to offset the use of natural resources, and it had upgraded the lights throughout the building under the Lighting Rewards Program to reduce kilowatt-hour demand."  Rivers again wrote HMFA with the same complaints.  HMFA again forwarded that application to HUD recommending approval; **HUD approved the 4.5% increase.**

Plaintiffs also contend that Zion Towers lost its non-profit status from February 16, 2002 - August 12, 2004, rendering it an invalid mortgagor unable to solicit rent increases during that period.

In the First Amended Complaint, Plaintiffs bring seven causes of action related to these rent increases.  Count One accuses HUD of violating the Administrative Procedure Act (5 U.S.C.A. § 701

3

*et seq.*) by approving rent increases by an invalid mortgagor and lacking a narrative statement and updated ECP.  Count Two accuses all Defendants of violating the National Housing Act by not providing tenants with relevant information about and an opportunity to comment on the rent increase requests.  Count Three alleges that all Defendants violated the NHA by approving rent increases during the time that Zion was an invalid mortgagor because of its loss of non-profit status.  Count Four accuses all Defendants of violating the NHA by approving rent increases when narrative statements and ECP's were improper.  Count Five asserts Due Process claims against all Defendants related to the allegedly faulty notices.  Finally, Counts Six and Seven essentially reassert the claims in Counts Three and Four, but now under New Jersey law and only against the State Defendants.

Before filing this Complaint, Rivers brought a separate action in New Jersey superior court appealing certain of the same HMFA rent recommendations; the N.J. court dismissed the appeal finding that the HMFA recommendation were not final reviewable decisions in that final approval lay with HUD.  *See In the Matter of the Application for Rental Increase at Zion Towers Apts. (HMFA #2)*, 782 A.2d 956 (N.J. Super. Ct. App. Div. 2001).

## II.     Standards

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Moreover, when a document attached to the motion to dismiss, but not submitted with the complaint, is undisputed and authentic and the basis for the plaintiff's claims, a court may consider such a document.  *Pension Benefit*, 998 F.2d at 1196.  Likewise, a document attached by a defendant to a motion to dismiss is considered part of the pleading if it is referred to in the complaint and is central to the plaintiff's claims.  *See Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2002).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

## III.    Discussion

There are two central issues here.  The first is whether Zion was a valid mortgagor able to even seek rent increases while its non-profit status was allegedly suspended.  The second is whether the tenants of Zion Towers were provided with statutorily sufficient information before Zion's rent

increase proposals were granted. For the reasons explained below, the Court answers both of these questions in the affirmative.

### A.    Zion Tower's Non-Profit Status was Irrelevant

Plaintiffs contend, both in the Counts Three and Seven of the Complaint and in opposition to Federal Defendants' motion to dismiss, that Zion's status as a non-profit corporation was suspended by the New Jersey Department of Revenue from February 16, 2002 until August 12, 2004. Plaintiffs contend that, due to this suspension, Zion was no longer a valid mortgagor as outlined in the relevant federal and New Jersey statutes. (Compl. ¶ 72, 85; Pl. 12/13/2005 Opp. Br. at 22-23.) However, the Court can find no authority for Plaintiffs' contention.

As defined in 12 U.S.C.A. § 1707(b), "the term 'mortgagor' includes the original borrower under a mortgage and his successors and assigns." The clear terms of this definition in no way require that an original borrower be a non-profit corporation or maintain the same status it had when it took a mortgage. Indeed, this definition allows successors or assigns to still benefit from the title of mortgagor without any qualifications.

The New Jersey statutes relating to HMFA are similarly drafted. N.J. Stat. Ann § 55:14K-3(I) defines "housing sponsor" as "any person, partnership, corporation or association, whether organized as for profit or not for profit, to which the agency has made or proposes to make a loan, either directly or through an institutional lender, for a housing project." Likewise, N.J. Admin. Code § 5:80-1.3, defines "housing sponsor" as "any person, partnership, corporation or association to which the Agency has made or proposes to make a loan, either directly or through an institutional lender, for a housing project." These statutory definitions, upon which Plaintiffs rely in the Complaint, lead the Court to conclude that Zion's status – whether as a non-profit, for-profit, corporation or private association – between 2002 and 2004 in no way affected its ability, as the original housing sponsor or borrower, to seek rent increases during this same period. Therefore Counts Three and Seven must be **DISMISSED.**

### B.    Plaintiffs Received Proper Notice of Proposed Rent Increases

Plaintiffs next argue violations of the Constitutional Due Process, the Administrative Procedure Act, the National Housing Act, and N.J. housing laws because Zion's allegedly insufficient narrative statements and energy conservation plans deprived them of proper notice before proposed rent increases were evaluated and implemented or denied by HMFA and HUD. Plaintiffs essentially claim that absent more complex statements, they could not make a reasoned response to the applications.

#### 1.    Defining the Narrative Statement and ECP

As discussed earlier, in proposing a rent increase, Zion Towers was required to provide "[a] narrative statement of the reasons for the requested increase in maximum permissible rents," and "[a] status report on the project's implementation of its current Energy Conservation Plan." 24 C.F.R. § 245.315(a). Tenants must be provided an opportunity to both review all documents in support of the proposed increase and comment thereon. 24 C.F.R. § 245.310.

5

The rationale for HUD's Section 236 housing rent increase notification requirements is outlined in 12 U.S.C.A. § 1715z-1b which "recognize[s] the importance and benefits of cooperation and participation of tenants in creating a suitable living environment in multifamily housing projects and in contributing to the successful operation of such projects, including their good physical condition, proper maintenance, security, energy efficiency, and control of operating costs." Section 1715z-1b then explains that, to this end, the HUD Secretary shall ensure "tenants have adequate notice of, reasonable access to relevant information about, and an opportunity to comment on [rent-increase requests] . . . and that such comments are taken into consideration by the Secretary."

The Court's review of the Complaint, party briefs, case law and legislative background offer no more clarification as to the definition of a narrative statement or ECP.[1]  However, it appears from the plain language that the regulations mean to allow the opportunity for a dialogue with tenants regarding the maintenance and efficiency of HUD housing.  Moreover, these comments are to be taken into consideration by the Secretary but are by no means decisive.

### 2.     The Narrative Statements and ECP were Sufficient

Plaintiffs do not challenge Zion's provision of adequate form of notice, place and time to review proposed rent increases and accompanying documentation as required under 24 C.F.R. § 245.310.  Rather they challenge substance and language of the accompanying documentation referred to in the proper notice.  As an initial point, it is clear that the rationale behind enacting the notice requirement – that tenants be involved in any discussion of rent increase – was met here.  As outlined in the Complaint, Zion tenants, including Mr. Rivers, had the opportunity to review the rent notice and make comments thereon.  The Complaint itself provides numerous examples that Mr. Rivers's letters were clearly received and reviewed by HMFA. (Compl. ¶ 28, 41, 49.)  Indeed, HMFA responded to River's letters on numerous occasions, explaining that it felt Zion's narrative statements and ECP status reports were sufficient.  (*Id.*)  Moreover, on at least one occasion, Zion revised its rent increase application in response to comments from Rivers.  (*Id.* ¶ 36-37; State Def. Br. at 6-7.)  HUD, while not responding directly, would have been forwarded Rivers' comments and then considered them in making its determinations on the applications.

---

[1] Although the regulations do not define the contents of an ECP status update, Plaintiffs cite to a HUD handbook for clarification. (*See* Pl. 12/13/2005 Opp. Br. at 21.)  In the HUD pamphlet entitled "Multifamily Asset Management and Project Servicing," chapter 7-21 and 7-22 outline the requirements for an initial submission by an owner to raise rents in a Section 236 building.  While forgoing any further specification as to the contents of a narrative statement, Section 7-22(f) briefly discusses the requirement that a rent-increase application must contain an ECP status update, saying "[t]his may be: (1) a narrative report coded to facilitate references to the plan; or (2) copy of the plan annotated to show the current status of all items that were scheduled to be completed within 60 days after the rent increase is proposed to be effective." *See* www.hudclips.org (available as document no. 4350.1) (last visited 12/12/2006); language also available at 53 Fed. Reg. 46666-01, 1988 WL 275394 at *46676 (Nov. 18, 1988).  This is the only reference the Court can find to the nature of an ECP status report, and this reference does not appear to the Court to affect any binding requirements exceeding the form of ECP status reports that Zion submitted.

6

Plaintiffs are asking this Court now to substitute its own interpretation of the sufficiency of Zion's narrative statements and ECP status reports for HMFA and HUD's; this is something the Court cannot do. *See Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006); *In re Adopted Amendments To N.J.A.C.*, 839 A.2d 60, 66 (N.J. Super. App. Div. 2003). This Court may only set aside an agency action (such as the decision to grant or deny Zion's rent requests) upon a showing that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the Constitution, or relevant statutes. 5 U.S.C.A. § 706; *Petition of United Parcel Service, Inc.*, 604 A.2d 960, 965-66 (N.J. Super. App. Div. 1992). The rule in the Third Circuit and New Jersey is that "[a]n agency's reasonable interpretation of its own regulations attracts substantial judicial deference." *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 315 (3d Cir. 2006) (citation omitted); *Mutschler v. New Jersey Dept. of Envtl. Prot.*, 766 A.2d 285, 292 (N.J. Super. App. Div. 2001). "Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994) (citation omitted); *accord In re Freshwater Wetlands Prot. Act Rules*, 852 A.2d 167, 184 (N.J. 2004).

Once again, the Court notes that on numerous occasions, HMFA responded to Rivers' questions about rent increase proposals saying that the submitted application materials, narrative statement, and ECP were sufficient to go forward with the application. (Compl. ¶¶ 28, 41, 49.) Additionally, HMFA would have forwarded the tenant comments, along with the entire application packet, for final HUD approval of the rent increase. From these instances – in which the agency, HMFA, was both apprised by Plaintiffs of concerns with Zion's applications, narrative statements, and ECPs, and responded that the agency found them sufficient – instances in which HUD then acted upon the entire application packet – the Court can clearly infer the agencies' interpretation that Zion's applications and materials satisfied the narrative statement and ECP statutory requirements. Moreover, those comments by Rivers to which HMFA did not directly respond concerned applications with statements that were sufficiently similar to those on which HMFA directly responded to convince the Court a similar interpretation would apply.

Therefore, the Court finds that HMFA and HUD's determination that the narrative statement and ECP were sufficient falls within their controlling interpretation of the relevant regulations.

## IV.   Conclusion

In sum, because Zion was at all times a sponsor properly able to request rent increases, and because notice and accompanying materials were sufficient, there was no violation of the APA, NHA, New Jersey laws or Plaintiffs' Due Process rights. Therefore, Defendants' motions to dismiss are both **GRANTED**, and the Complaint is **DISMISSED.** An appropriate Order accompanies this Letter Opinion.

                                                   s/ William J. Martini
                                                   **William J. Martini, U.S.D.J.**